STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SAMSON KAMAI, Defendant-Appellant.
No. 29110
Intermediate Court of Appeals of Hawaii.
July 29, 2009.
On the briefs:
Ronette M. Kawakami, Deputy Public Defender, for Defendant-Appellant.
Anne K. Clarkin, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appelee.

SUMMARY DISPOSITION ORDER
WATANABE, Acting Chief Judge, FOLEY, and NAKAMURA, JJ.
Defendant-Appellant Samson Kamai (Kamai) appeals from the Judgment filed on March 18, 2008, in the District Court of the First Circuit, Kaneohe Division (district court).[1] After a bench trial, Kamai was convicted of negligent failure to control a dangerous dog, in violation of Revised Ordinances of Honolulu (ROH) § 7-7.2 (1990 & Supp. No. 7, 8-05 & Supp. No. 12, 2-08).[2] Kamai was sentenced to pay a fine of $500 and court fees, and the district court further ordered the humane destruction of Kamai's dog.
On appeal, Kamai contends there was insufficient evidence to support his conviction because: 1) "there was no substantial evidence that he had acted negligently where his dog had not previously engaged in violent or aggressive behavior"; and 2) Kamai's dog had been provoked by the attack victim's "free-roaming dogs." We affirm.

I. BACKGROUND

A. The Prosecution's Evidence
When viewed in the light most favorable to the prosecution, the evidence showed as follows. Kamai owned a pit bull named "Hoku." Up until March 2005, Kamai had lived next to Pamela and Steve Vreeken. While the Vreekens were Kamai's neighbors, there were three separate incidents in which Hoku escaped from being chained and attacked and killed the Vreekens' cats. In March 2005, the Vreekens moved from their property, but beginning in October 2005, they permitted Joshua Cord to live on the property. After moving, Pamela Vreeken returned to the property once or twice a week to pick up the mail. She would see Hoku, which she recognized as the same dog that had killed her three cats, chained up in the front of Kamai's residence. Steve Vreeken also saw Hoku chained in the front of Kamai's property when he picked up the mail at his former residence two or three times a week.
Cord had two dogs with him on the Vreekens' property. On March 26, 2007, Melvin Ah Nee, a friend of Kamai who resided with Kamai, came onto the Vreekens' property. Ah Nee warned Cord that Hoku had gotten loose and that Cord should check on Cord's dogs. Cord saw Hoku come onto the Vreekens' property and charge at Cord's dog. When Cord tried to move his dog out of the way, Hoku rammed into Cord, knocked Cord over, and bit Cord in the left calf, causing deep lacerations. Cord wrestled with Hoku and sustained deep lacerations to the tips of his fingers.
Kamai came onto the Vreekens' property and was able to get Hoku to release Cord. After securing Hoku, Kamai took Cord to Kahuku Hospital. As a result of the attack. Cord received numerous stitches to his leg and fingers, and lost a small portion of his left calf. Cord identified Hoku, a brown pit bull owned by Kamai, as the dog that attacked him. Hoku did not have a collar, but was normally secured by a chain wrapped around the dog's neck and clasped together, with the other end of the chain attached to a stake in the ground in the front of Kamai's property. Prior to the attack. Cord on one occasion had found Hoku running loose and had returned Hoku to Kamai.

B. Kamai's Testimony
Kamai testified that he has owned several pit bulls, including two dogs named Hoku. One of the dogs named Hoku was a female that Kamai referred to as "Hoku Girl." Kamai stated that after the Vreekens moved out, "Hoku Girl" was poisoned and died. According to Kamai, "Hoku Girl" had puppies, including a male he named Hoku because it looked like its mother. Kamai testified that the male Hoku, which Kamai referred to as "Hoku Boy," was the dog that attacked Cord, that "Hoku Boy" had never bitten any person or animal before, and that "Hoku Girl" was the dog that had killed the Vreekens' cats.
Kamai acknowledged that prior to the attack on Cord, "Hoku Boy" had gotten lose when its leather collar broke and Cord had returned the dog to Kamai. Kamai stated that he then secured "Hoku Boy" by wrapping a metal chain around its neck and using a metal buckle to hold the chain links together. Kamai testified that on the day that "Hoku Boy" attacked Cord, the chain was not broken and the buckle was intact, so Kamai did not know how the dog had gotten loose.

II. DISCUSSION
Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kamai's points of error as follows:
1. We reject Kamai's argument that there was insufficient evidence to show that he negligently failed to take reasonable measures to prevent his dog from attacking Cord. Kamai's argument is based on his testimony that he had two dogs named Hoku and that the Hoku that attacked Cord had never before attacked any person or animal. The district court, however, rejected Kamai's testimony on this point as not credible and found that there was only one dog named Hoku. We accept this finding of the district court because "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Martinez, 101 Hawai'i 332, 340, 68 P.3d 606, 614 (2003) (quotation marks, citations, and brackets omitted) . The district court reasoned that if Kamai's testimony was to be believed, then "Hoku Boy" would have been a puppy when first placed in front of Kamai's property. The district court noted, however, that the Vreekens and Cord did not notice a puppy growing into an adult dog in front of Kamai's property, and their testimony instead indicated that there was only one dog named Hoku.
In addition, just prior to the charged attack. Ah Nee, who resided with Kamai, warned Cord that Hoku had gotten loose and that Cord should check on Cord's dogs. This provided evidence that Hoku's violent tendencies were known to those familiar with Hoku. Kamai also had notice of Hoku's violent tendencies because the Vreekens had complained to Kamai that Hoku had killed their cats. The evidence also showed that Hoku did not have a collar; that Kamai acknowledged that he could have used a better chain to secure Hoku; and that Kamai knew that Hoku had escaped before. We conclude that there was substantial evidence to show that Kamai negligently failed to take reasonable measures to prevent his dog from attacking Cord.
2. Kamai contends that there was insufficient evidence to support the district court's determination that Hoku had not been provoked by Cord's dogs to attack Cord. We disagree.
ROH § 7-7.2 provides that "[a] dog owner commits the offense of negligent failure to control a dangerous dog, if the owner negligently fails to take reasonable measures to prevent the dog from attacking, without provocation, a person or animal and such attack results in . . . (2) bodily injury to a person other than the owner." ROH § 7-7.1 (1990 & Supp. No. 12, 2-08) provides, in relevant part: "`Provocation' means the attack by a dog upon a person or animal was precipitated under the following circumstances: . . . (4) The dog was attacked or menaced by the animal or the animal was on the property of the owner of the dog [.]"
Kamai argues that the district court erred in determining that Hoku had not been provoked to attack Cord under the above-described circumstance of provocation because there was evidence that Cord's dogs were free to roam around the neighborhood.[3] We reject that argument. The evidence showed that Hoku attacked Cord while Cord and his dog were on the Vreekens' property. Cord testified that his dogs were not involved in any fights with Hoku that day and that Cord did not hear sounds of dogs fighting prior to being attacked by Hoku. We conclude that there was substantial evidence to support the district court's finding that Hoku had not been provoked to attack Cord.

Ill. CONCLUSION
The March 18, 2008, Judgment of the district court is affirmed.
NOTES
[1] The Honorable Philip Doi presided.
[2] ROH § 7-7.2 provides in pertinent part:

Sec. 7-7.2 Prohibited acts  Conditions on owner  Penalties.
(a) A dog owner commits the offense of negligent failure to control a dangerous dog, if the owner negligently fails to take reasonable measures to prevent the dog from attacking, without provocation, a person or animal and such attack results in: (1) the maiming or causing of serious injury to or the destruction of an animal or (2) bodily injury to a person other than the owner. A person convicted under this subsection shall be guilty of a petty misdemeanor for a first offense and a misdemeanor for a subsequent offense and sentenced in accordance with subsections (c), (d), and (e).
(b) For the purposes of this section, "reasonable measures to prevent the dog from attacking" shall include but not be limited to: (1) measures required to be taken under Article 4 of this chapter to prevent the dog from becoming a stray; and (2) any conditions imposed by the court for the training of the dog or owner or for the supervision, confinement or restraint of the dog for a previous conviction under this section. ROH § 7-4.2 (1990 & Supp. No. 12, 2-08) provides that "[i]t shall be unlawful for the owner of any dog, whether the dog is licensed or not, to permit such dog to become a stray." ROH § 7-4.1 (1990 & Supp. No. 12, 2-08) defines "stray" or "stray dog" to mean
any dog: (1) on the premises of a person other than the owner of the dog, without the consent of an occupant of such premises; or (2) on a public street, on public or private school grounds, or in any other public place, except when under the control of the owner by leash, cord, chain or other similar means of physical restraint; provided, that such leash, cord, chain or other means is not more than eight feet in length; and provided further, that this provision shall not be construed to permit that which is prohibited by any other law.
[3] Kamai also cites Ah Nee's testimony that Cord's dogs antagonized Kamai's dogs. The district court, however, was free to reject Ah Nee's testimony, particularly in light of Ah Nee's additional testimony that Hoku did not bite Cord and that Cord's injuries must have resulted from Cord's falling off the roof, when Kamai himself acknowledged that his dog had attacked Cord.